Page number 24-6207, Dr. Jay and Monique Bernhardt v. United States Capitol Police Board in establishment of the Fiscal Year with FedEx event. Mr. Springer, Verdeja, Mr. Dixon, for you. Mr. Springer, good morning. Good morning, Your Honors, and may it please the Court, Brian Springer on behalf of the federal government. Plaintiff is permitted to engage in his desired demonstration activities on the sidewalks immediately in front of the House and Senate stairways and on the various other open spaces throughout Capitol grounds. At the same time, the regulation at issue directs that conduct off of the stairways themselves to protect the safety and security of the Capitol and the people who work there. The regulation is constitutional on two independent basis. First, it is a reasonable regulation that applies outside any traditional public forum and preserves the stairways for their intended purpose. Second, even assuming that the stairways are a public forum, the regulation is a valid time-place-manner restriction that relates the location of speech. I'd like to address those two points in turn, and I think that this Court's decision in Hodge is a helpful starting point for the public forum analysis. That case held at the Supreme Court plaza and the staircase leading up to the plaza are a non-public forum. Well, Mr. Springer, first, do you think it's fair to say that historically the Capitol steps have sometimes been a designated public forum open to all manner of speech? Your Honor, I'm not sure that I would say that they've ever been a designated public forum. Designated public forum usually means that it's fully open to the public, and here the evidence in the record shows that sort of over time, the conditions on which the public has been allowed to demonstrate have changed to some degree. We don't have kind of the exact situations, but I think it's changed over time. But even if it were a designated... Was it a designated public forum? Your Honor, even if there were times it was a designated public forum, starting, you know, right after the September 11th attacks in 2001, the Board has closed these off and it's not allowed to do so, even if this were a designated public forum before that. So, let me ask you a more basic question. In Dellums, the opinion of this court incorporated the decision of Chief Judge Harold Green in Wilson, saying that the principles identified by Judge Green applied and were binding. That is a case involving the Eastern Capitol steps, the very steps we're talking about here. And Judge Green's opinion, which all three judges on this court viewed as setting forth the principles involving demonstrations on the Eastern Capitol steps, applied. Is not this panel bound by Dellums? Your Honor, I don't think that Dellums specifically addressed the question of whether or not this, you know, this set of stairways is a public forum. It is true... Any respect, I'm literally quoting from Dellums, where twice the court said the principles identified in Nicholson control here. And while in the Dellums case, people had actually been arrested for not leaving the steps. Why isn't that case directly on point here? Your Honor... When this case first came to my attention, I thought, why hasn't Dellums settled this for years? Your Honor, again, I don't think that... It is true that Dellums points to Nicholson, which I don't think was particularly disputed in that case. And it does talk about the principles there. It doesn't... Disputed? The principles were adopted by this court. That's in the opinion in two places. Your Honor, even the district court in this case said that no prior case had ever analyzed the question of whether the stairways are a public forum. And Dellums was specifically a question about a Bivens cause of action and whether to imply a Bivens cause of action. I also... Much more than Bivens, as you well know, counsel. Your Honor, I think that case is largely about the principles of Bivens. And it also is factually disputing about what is the capital building, what are the capital steps. And we're talking about the very same steps that are involved in this case. And this court agreed with the principles that Judge Green had identified about the  That's what I'm trying to get at. I don't know why you're fighting me on this. Your Honor, I mean, a couple things that I will say about Dellums. I mean, I think, first of all, it is true that it talks about some of the principles in Nicholson, but it doesn't actually do a full analysis of the public forum, which has developed in the interim, you know, in the years since then. I will also say that in Dellums, the particular protested issue was being led by someone who was in Congress, by members of Congress. And that... There were 2,000 people who marched up and at least two members of Congress were mentioned. All right? But lots of people were arrested. This is a protest against the war. All right? I don't know how we ignore that. This is a peaceful protest. And the problem was when the Capitol Police told the demonstrators to leave, they wouldn't leave. And so they were arrested. Your Honor, I mean, I think a couple of things that are important here. I mean, one is that we're talking about the public forum analysis, which, again, I don't think that Dellums actually does a full public forum analysis. Neither really did the Nicholson decision. It just said, you know, we think that this is a public forum without much analysis. It said more than that. It talked to the history and the purpose, the architecture, et cetera. I don't know why the government is citing this case because Judge Green interpreted the statute in a manner that allowed regulation. All right? That it wasn't a public forum like the streets and passageways. That there are government interests that have to be taken into account and can be taken into account consistent with the Constitution. Your Honor, I think that's right. Even if this court were to accept that the stairways are a public forum, this is a valid time, place, manner restriction because it's just about the location of speech. And all that the restriction at issue does is it directs this conduct off of the stairways onto the sidewalks below. And the reasons for that are spelled out by the Capitol Police Board, which is that they need a sufficient buffer zone around the Capitol building in order to protect both the building itself and the people who work there. But they allow congressmen and senators to bring anybody they want and they allow people who are there to join the demonstrations that are sponsored by congresspersons and senators. So that defeats your security concerns. If members of the public can just join, they haven't been through any security. Your Honor, I don't think that's right. I think the board treats that situation as qualitatively different than one where it's just the public demonstrating because these are events that are hosted by congressmembers in their official capacity. Sure, join me on the steps. Your Honor, it's true. And the police, Capitol Police don't know who those people are. They haven't been through any security. Your Honor. They have bombs or whatever. Your Honor, I mean, a few points on that. I think first of all, usually when these events happen, the Capitol Police are alerted ahead of time so they can post additional security and have extra people there. They also trust that members of Congress, because again, they are hosting these events in their individual capacity and require to be personally present the whole time. Don't question about it. They're treating those as different. All the members of Congress, all right? But the members of Congress don't have control over people who join them there. But Your Honor, again, the board is allowed. And again, we're sort of at the point where I think we're talking about this in terms of intermediate scrutiny. We're assuming that this is a public forum. Yes, because of the history. If it's not historical, back to ancient times, by designation. Your Honor, I mean, again, you know, I think historically that's not the way these stairways have been treated and that's not the way, you know, they're integrated into the actual building itself. I thought that was not an accurate statement. It endorsed the principles found by Judge Green. And I don't know how we can ignore that. And I don't know how the government can ignore it. Your Honor. And yet, Judge Green clearly acknowledged that there were important governmental interests. And the question is, you know, does the rule that's challenged here do that? This member exception. Again, Your Honor, I mean, I think the way that the board has understood this exception is that it treats it as something that's qualitatively different. And I would point this for, you know, if it's applying... Different than what? Qualitatively different than just members of the public hosting their own demonstrations on the steps, sort of on a whim, you know, as they want. Those can be inherently unpredictable. If I can ask you, maybe following up on Judge Rogers' question, I mean, even if we were to assume with the government that this is a non-public forum because it's, you know, part of the building or, you know, for, you know, some reason, it's a reasonable place that, you know, it's not a traditional public forum. Even if we assume it's a non-public forum, I'm interested in understanding how we decide that this regulation is reasonable. So perhaps it would be reasonable if only members could speak or demonstrate on the steps because it's their workplace. But including anybody that a member chooses to sponsor to allow to be part of a demonstration, how is that reasonable? Even if we're just in the land of reasonableness, how is that exception reasonable? General, I think it's still reasonable. And again, I would point the court to what the regulations specifically say. So I think that this is 12.2.20. What it says is that when Congress members are having these sorts of events or, you know, doing their own demonstration activities, it has to be in their official capacity as a member. These aren't just them expressing personal views. This is them expressing a view as a member of Congress. And as part of that, they're allowed to bring members of the public sort of under that umbrella. Again, based on this idea that there's going to be trust and that Congress members aren't going to do something that's likely to risk some kind of threat to the Capitol. But they have to be doing this in their official capacity as a member. They have to be present. And it's, you know, an event that they've organized themselves or sponsored. So, you know, but what about the unbridled discretion, right? So are there any particular criteria that are applied to who can demonstrate with a member in their official capacity? It's just up to the member, presumably, to determine who they want to support or sponsor for demonstrations and protests, even in their official capacity. So there's a lot of discretion there. And if you don't have connection to a particular congressman or senator, then you're out of luck. Soon again, I don't think that this implicates the unbridled discretion doctrine. You know, Judge Millett had raised some of these concerns with a prior version of the regulation. And as part of this litigation, the board amended the regulation in particular to add that in the official capacity as a member. Again, this is members of Congress who work at the Capitol holding events. Explain to me why the in their official capacity eliminates the discretion problem. Because, sure, in their official capacity, you know, members could presumably speak on the steps. But when they're bringing members of the public in or as part of their official capacity, you know, participating in a demonstration or First Amendment activity. But that's still discretionary. Your Honor, it may be discretionary in the sense that the members get to choose what events they want to hold themselves, but they're holding the event themselves. And if they want to invite others in, that's okay. They're not sort of going out with a problem or potential problem that was identified with the previous version of the regulation was, was that members of Congress could advocate for certain things and say, I'm going to let you speak and I'm going to let you speak. This is them out there speaking themselves. And if they want to invite people to join them, they're able to do that. So it is the members speaking themselves. Your Honor. Not necessarily a member standing, you know, standing by while other people are speaking. Your Honor, I don't know that there's a specific. I don't really think that it entirely. I mean, I think that this event itself is one that the member is endorsing. You know, the member is saying, I am holding this event. This is an event I'm holding in my official capacity. And therefore, because of that and because of the underlying trust of members of Congress and them sort of taking responsibility for the fact that this is the event that they're holding, that's the reason that this is treated differently and doesn't implicate some of the problems that plaintiff has raised. And discretion is okay because it's in their official capacity. And of course, in their official capacity, members can speak about or support whatever speech activity they want to. I think that's right, Your Honor. And again, I mean, you know, I will say as well that if you look at the record here, you know, the thing, the types of topics that are covered, you know, there's no content discrimination here because the topics that are covered range the full gamut of political and social, you know, issues of the day. That's what Congress members are going out there, you know, on the occasions that they do this to speak about. It's about different, you know, things that implicate their constituents and they're out there speaking as a member. Again, by regulation, it has to be in their official capacity. I guess my concern, again, is that following up on Judge Rao's questions, attributing, you know, good faith and intention to the members of Congress does not resolve the problem of safety if you allow members of the public to join in the demonstration. And we know that for all kinds of different reasons, which you cite about how many threats are made, how many times members of Congress are injured, even at their own events. So that this notion, I'm trying to divide in my own mind the principles that Judge Green laid down that this court accepted, that there can be peaceful demonstration on the Capitol's steps, the eastern steps, and that the types of events that happen on 9-11 and on January 6th, no regulation is going to provide protection because those events involve persons who are not going to follow any rules or regulations, who are not going to abide by physical barriers that have been placed, who damaged the Capitol building. Capitol police die and were injured. So that type of lawlessness does not mean, or the government seems to be telling us it does mean, except for members of Congress, you close the steps. So, Your Honor, I mean, I think a few points to that. I mean, specifically with respect to the members of Congress, as I mentioned before, usually when these events are happening, members of Congress are telling the Capitol police ahead of time so there can be added security there in case some kind of issue arises. This is your counsel and you tell us all these threats against elected officials. All right? The Capitol police are not in a position to protect against all of them, but they can do what they can. But once you address members of the public or people who haven't been screened in any way, you undercut the whole rationale. And it doesn't mean you can't have time, place, limitation. Your Honor, I... To close the Capitol steps unless a member invites members of the public. Your Honor, I think that this is a reasonable tradeoff that the board has made where it's saying members of the public by themselves cannot demonstrate on the steps. They're, of course, welcome to engage, you know, as plaintiffs can here in their demonstration activity right on the sidewalks, immediately in front of the steps, as well as the various other places throughout Capitol grounds. So we distinguish between the exterior and the interior of these historic buildings. But for some reason, we are now passing off the steps which are part of these buildings. I mean, this is classical architecture at its zenith. Steps were a big part of these buildings. They're not just rec tanks. Your Honor, I think that actually helps our point. These are parts of the building. People have been demonstrating there peacefully for years. And you won't disclose it except when a member says, you know, it's okay with me if members of the public come. Your Honor, again, I mean, I think there are a number of limitations on what's going on when Congress members are doing it that allows the board to treat that as a qualitatively different situation than when members of the public just sort of on a whim are out there doing it. It's not a whim. I'm just trying to deal with the realities of life. Everybody's got a gun, you know. Members who run for office, who take positions, individuals who take positions, run the risk of injury. And people are willing to take those risks. But does that mean we transform the Capitol Building, which means so much as an emblem of democracy? Our legislative building is now closed off beyond reasonable time, place, and circumstance. That's all I'm getting at. I don't understand how you can cite all these statistics about all these additional threats to members of Congress and think that we're going to be fine if a member of Congress sponsors an event and invites members of the public. Senator, I mean, again, I think the board thinks that that's a qualitatively different situation. I mean, just to address, I think, the other question here, I mean, I don't think that this in any way, you know, disrespects the principle that there are numerous places on Capitol grounds where people can protest and can speak to their legislators and the public. That's exactly the tradeoff that the board has made here. It's directed the conduct off of the stairways themselves. Again, the stairways lead up to non-public entrances for the House and the Senate buildings. If you go through the doors at the top, you're right at the House and the Senate chambers. This is where the board has determined it needs a buffer zone so that if things turn violent, it's not saying all protests are violent, but if they turn violent, it needs to have sufficient time and space to respond to that situation. And this is the buffer zone that it thinks has explained is necessary in order to provide it that time and space. Can I ask you a factual question? Is there any dispute about the elevated area right immediately beneath the steps? Is that considered part of the sidewalk, or is that area also in dispute? The record is a little bit unclear. Your Honor, yeah. There's the set of steps that comes down, and then there's sort of an elevated area. That is the sidewalk itself, and it's elevated because it's a curb where after the curb, there's an area where cars are able to drive, and that sort of runs. So that elevated area, you don't dispute that's a traditional public forum. It's a sidewalk where people can protest. So right at the bottom of the steps. The one clarification I should just say is that that's true in front of the House and Senate stairways. In front of the Capitol steps, the steps that lead to the Capitol Rotunda in the middle, right in front of it is the roadway. So that's an area where you're not allowed to protest as well. But there is a sidewalk that runs all the way along the front. It's both in front of the House and Senate stairways, and then there's a couple other pieces of it that sort of run all the way along the eastern side. And all of those are areas where plaintiff and others are allowed to engage in their desired, you know, protest activities. Thank you. All right. Well, I'm confused about that then because looking at these photographs, right, I thought and the sidewalk is not before us because the district judge just talked about the steps. I know the plaintiff disagrees with that. But looking just at JA 115, I thought these, the northern and southern sides of the building, that those parts of the sidewalk could not be allowed for demonstration activities. Do you know about that? So, yeah, I mean, maybe the helpful, you just pull up the... Look at JA 117, for instance. This is the House steps. And I thought the front, the front sidewalk was okay, but the north and south sections weren't. So, Your Honor, in front of it is okay. On the sides, I think there's some, in the map that's in the record, it's read there, but the Capitol Police doesn't enforce it as to that piece because that's also a sidewalk. And so the places that count as sidewalks that look like traditional ordinary sidewalks, which again is what this court addressed in its Letterman decision, those are places where, you know, there isn't a restriction or where the Capitol Police does not enforce the restriction. We're just talking about the steps. Yeah, my understanding of what the district court addressed was just the stairways themselves. Okay. Thank you. All right. Are there any other questions? I have a question that I would agree with you, but for this exemption. And I think it puts... It delegates too much authority to the members of Congress. And some more of these photographs indicate that some of these demonstrations sponsored and led by members of Congress are anything but peaceful. And I don't know, it's not something we can take judicial notice of, I guess, but there are members of Congress who do not always remain peaceful. And that's what worries me is you prevented one person from a vigil, which according to the dictionary is a watch. It says nothing about vocals, doing anything vocal, doing anything expressive or communicating in any way. And yet you've left this huge gap for members of Congress. And just looking at a photograph, page 156, there must be 150 people all over the steps. There's another photograph. Well, I don't have to go on with this, but that's what concerns me is the exemption just seems to wipe out the intent of keeping these steps, not keeping them safe for the members of Congress, keeping them away from demonstrations as they're defined in this definition. Jim, I want to make one clarification before I get to the heart of your question just about plaintiff's demonstration activity specifically. If you look at JA-16, JA-24, JA-403, and particularly JA-403, which is paragraphs 35 to 36, the events that he has proposed holding are ones where they would be praying out loud, they would attract large groups, he would be holding signs that express particular views. I just want to make clear that this isn't, you know, part of what the board is worried about is the sort of activity that is organized and conspicuous expressive acts that are likely to draw a crowd, that those are likely to create security and access concerns, especially because things are inherently unpredictable and can change on the turn of the time. But the demonstration activity and all the ones you've listed can be done by just one person. It can be done by one person, but I think there's two important, you know, respects to that. One is the Supreme Court's Heffron case makes very clear that the board is allowed to consider things, you know, sort of in the aggregate. And so it's not just a question about one person. It could be a bunch of single people. And the real problem is that it is both the case that a person, one person can pose a threat, but also that something that starts as one person or starts as something that's peaceful can quickly turn into something that's violent. And all that the board is trying to do here is preserve enough space and time so that they can do something. I mean, just to return, I think, to the heart of your question about the member exemption. I mean, again, I think the way that the analysis runs, and, you know, we have sort of two separate questions here. One about whether or not this is a public forum, and then a separate about whether or not, you know, this passes intermediate scrutiny because it's a time, place, manner restriction. I think your question really goes to the second bucket. And here... I work in non-public forum myself. So it has to be reasonable, and that's why I don't think this exception that swallows the rule that prevents demonstrations, I have a problem with whether that's reasonable. I mean, I think it's reasonable. So first of all, these demonstration activities by members of Congress are, as far as I understand, are relatively few and far between, just to give you a sense of how often they're happening. But again, the reason that the board thinks that they're different and treats them as qualitatively different is that this is... And all of the things that are in the record happen before they change the regulation. But what the regulation makes very clear is that these are events that are happening in the Congress member's official capacity. This is them throwing something, you know, hosting an event. And so the likelihood that they're going to continue to stay there if things turn violent or host an event that they know is likely to cause some kind of threat to the Capitol is the reason that the board, you know, it doesn't think that those situations are very likely. And it also is able to coordinate with them ahead of time and post additional security in those particular circumstances that it can't have around the clock. Okay. And it's going to be by invitation only. Your Honor, I don't think it is by invitation only. I mean, this is the Congress members. That's the problem, isn't it? One person is out there and passersby want to join that person in a vigil or in prayer. Your Honor, I mean, I think that's the reason that it's been... It may be that the leader has announced that this vigil will be occurring. And the speaker will be there. And hundreds of people want to come. Your Honor, I mean, I think that's the reason that the board is worried about it being an individual member of the public. When it's someone from Congress, there's, you know, advanced planning and there's things that are able to go on and additional protection. He is a member of Congress. That's correct, Your Honor. He wants to join the vigil. And the leader of the vigil has announced he will be conducting this vigil and a lot of other people want to come. So you end up with a crowd, hundreds of people. Your Honor, again, I mean, the way that the regulation reads, it has to be in the member's official capacity. I don't know if they're just informally joining, that that would count. It's usually them hosting an actual event or going out to speak themselves. It's not a formal invitation because a member can post something by saying, I'm happy to sponsor that vigil. All right? But, you know, the members can't control everything that goes on, even for events they sponsor. Your Honor, I mean, that's true, but this reflects that reality because, again, these are happening, you know, not with a huge amount of frequency and the Capitol Police can have additional security in those situations because these are people who work at the Capitol and are working with the Capitol Police when they're hosting these events to make sure that they stay safe. You're saying these events happen infrequently. I don't know where the statistics are on that. And, of course, around election time, there are lots of events. Secondly, I'm concerned that you acknowledged that the Capitol Police, even though these areas are designated in red, they are in their discretion just deciding where to enforce these things or not. So even though somebody is in the red area, maybe if the Capitol Police like them, you know, there will not be an arrest. Your Honor, I don't think that's right. I think this is the way, again, I think what the Capitol Police has done is it has distinguished between the places that look just like traditional public fora, that look like the ordinary public sidewalk, the ordinary public park. The stairways do not look like a traditional, you know, this is not a traditional place where people would go to express ideas and communicate ideas, and that's the reason for the distinction. History is wrong, all right? You can go back to ancient Greece, all right? And look at the steps where people spoke. So, you know, I mean, even under Judge Henderson's question about a non-public forum, aren't there problems with the exception? Your Honor, again, I don't think that there are problems because when you're asking the question in the non-public forum, you're asking the question of reasonableness, and particularly are you preserving this property for its intended use? And here, I think that's exactly what the board is doing. The board is saying these are steps that lead to non-public entrances for the Capitol, so people who work there are allowed to, you know, be there in protest because that is the place they work. Otherwise, you keep them, you know, you make sure there aren't demonstration activities happening there that can threaten either the safe passage or, you know, access to actually getting into or out of the Capitol building. And so it's preserving them the stairways for what they're intended to do. And that's the question that gets asked when you're asking the reasonableness question. So what happens to all the camera people who show up and block the passageways? I don't understand this notion about, well, we can have all these demonstrations in the streets and the passageways. I mean, that blocks Capitol Police's ability as well. To the extent that there are protests that are happening on the sidewalks, the regulation specifically says that the protest can't block, you know, can't impede the flow of traffic. That's part of what's built into them doing a demonstration in that area. I mean, to the extent that a member of Congress is hosting one of these events, again, usually the Capitol Police know ahead of time so they can alert members of Congress this is going to be happening, use a different exit. You know, and while the event is happening, there are people on the steps, but then they are cleared out as soon as the event is over. But 12.2.20, which sets out demonstration activity by members of Congress, as I am looking at it, doesn't say anything about giving notice to the Capitol Police ahead of time. It isn't explicitly required, but again, these are people who work at the Capitol, and the Capitol Police are there to protect them, and my understanding is that the way, you know, the normal practice is for them to give advance notice that this is going to happen. They don't have to. Your Honor, they don't have to, but they often do, and so then the Capitol Police are able to post additional security. But if they decide not to, there's no way the Capitol Police would be prepared for, say, a demonstration of 200 or 300 people. Your Honor, yeah, my understanding is that, you know, usually, especially when it's a big event, it's something that is communicated to the Capitol Police Board ahead of time, because again, the Capitol Police Board is working closely with the members of Congress. I mean, these, they're there to protect the members of Congress, and so usually the way that this runs in practice is that this is, there's advance notice, there's planning about what kinds of things are you going to have, and then they can also post additional security as needed. Well, actually, the District of Columbia has some permit requirements. The Park Service has some permit requirements. All these groups get together and talk to one another, and they probably do it electronically now, so when an application comes in, they all know. So you would want the court to affirm and fall? Your Honor, we're asking... We haven't talked about the remedy at all, but... Your Honor, we're asking the court to reverse. Obviously, if the court disagreed with, you know, our, the government's arguments on the merits analysis, we think that the proper scope of the remedy, it's very clear under the Supreme Court's recent decision in CASA, which was decided after the district court's decision. But you would affirm in full the regulation as consistent with the First Amendment. Your Honor, we'd ask this court to uphold the regulation as consistent with the First Amendment. All right. Thank you for taking some time to reply. Mr. Dixon. Thank you. As far as it goes. May I please support Josh Dixon on behalf of Pele, Reverend Patrick Mahoney. The district court got this case exactly right. The Capitol Grounds is a traditional public forum. The regulation is not narrowly tailored, and the district court did not abuse its discretion in entering a universal injunction against the regulation. Mr. Dixon, before it leaves my mind, what if we lopped off the member exemption? The regulation would still be unconstitutional under the district court's own reasoning. The Capitol Grounds are a traditional public forum. Even if the member are not allowed on the Capitol steps, individuals are allowed to have lunch, walk their dogs, sit and talk the issues of the day, just like they would be in any other sidewalk, street, park, whatever the case may be. And the regulation is still not narrowly tailored under the precise logic of leadermen. Mr. Dixon, it seems to me that the district court's opinion does create some line-drawing problems. District court says we're only addressing the steps below the barricade. That was put up by Capitol Police, but that's a temporary barricade. So below the barricade is now, under the district court's reasoning, a traditional public forum. What if the Capitol Police moved the barricade, either down the steps or higher on the steps? I mean, to affirm the district court's ruling, we'd have to conclude that some part of the steps is a traditional public forum, and I'm not sure how we would draw that line. I don't think that's right, Your Honor. The reason that Reverend Mahoney wanted to go out there on the Capitol steps, I'm not sure that this timing is crystal clear from the briefing, but Representative Bush was out there July 31st, give or take, until August 3rd, 2021. Reverend Mahoney decided to go out to literally the exact same place, where Representative Bush held her four- or five-day demonstration. A few days later, I believe, was August 12th of 2021. He's not seeking to go above the barricades. Representative Bush didn't go above the barricades. This court doesn't have to rule above the barricades in order to decide this case. I know, but the determination that below the barricades is a traditional public forum means that the Capitol Police can't just close it off for security interests, for instance. It may very well be that the Capitol Police have a different interest above the barricades. Presumably, they put the barricades there for a reason. We didn't explore that because Reverend Mahoney, again, didn't want to demonstrate above the barricades, but it may very well be that the considerations that caused the Capitol Police to close the steps above the barricades to even individuals sitting, talking, having lunch, would also justify prohibition on public speech. Most, though, the fact that people are engaging in activities below the barricade, perhaps suggests that below the barricade is a designated public forum, or sometimes the Capitol Police allow that area to be a designated public forum, where people can engage in First Amendment activities. I respectfully disagree with that framing. The Jeanette Rankin Brigade case in 1972 said the Capitol grounds are a public forum. The Liederman case? But the question is, are the steps part of the building, or are they part of the grounds? I mean, that's the whole crux of this case. Understood, Your Honor, but Liederman follows up with that and says the working presumption is that the Capitol grounds are a public forum, in order to demonstrate that it's not. The government has to show that the property in question is inconsistent with public assembly and debate. On this record, the government cannot make that showing, given what it allows on the steps. Let me ask you another question. So, if the Capitol Police had information that there was some threat to the Capitol, you know, that people were planning some kind of violent demonstration, or, you know, violent activity on the Capitol grounds, could they then close the steps to that activity? I believe so. And the traffic regulations give the board that authority. I don't remember what year it was. I believe it was January 6, 2023. They did. If they can close the steps, then doesn't that take it out of the realm of being a traditional public forum? If even on your account, they can close the steps in order to preserve the security of the Capitol, then at most, it's at times a designated public forum, but not a traditional public forum. To be clear, I'm not suggesting that the Capitol Police could close the steps permanently. What they have done in the past is closed it on January 6, for example, 2023. That's a permissible restriction, even in a traditional public forum. But closing it fully creates a non-public forum by the government's own Ipsy Dixit, which we know the government can't do under the Grace opinion, under the Liederman opinion. So what if the Capitol Police were to say, we believe the Capitol is, you know, credibly under threats of violence most of the time, and so we close the steps to First Amendment activity? On your reasoning, that would be okay. But that also is incompatible with the idea that it's a traditional public forum. We would, I mean, obviously, this is a hypothetical. I don't know the evidence that we would be talking about. There could be a set of circumstances in which a closure more than a day would be permissible. I mean, in the wake of January 6, the Capitol Police closed entire Capitol Square, which is the city block, until we filed our lawsuit in August of 2021. So it was closed for nine months. Part of the reason we filed our lawsuit was because we believed that was too strict of a regulation. And, in fact, after we filed the lawsuit, the government did reopen Capitol Square for demonstrations. So, you know, it may be that more than a day is permissible, given the nature of the threat, but we would have to evaluate that on a case-by-case basis. What we do know is that today, the steps below the barricades are open to members of Congress at their whim, individuals to sit, stand, eat, walk, pray, whatever they want to do on them. I want to address, if I may, the member exemption, because I don't think that that was clear. The way that the member exemption used to work, it had three parts. Members can be exempt from demonstrations they organize, demonstrations they sponsor, and demonstrations they advocate for. When we originally sued, advocate for was part of the exemption. As part of the settlement in this case, that was taken out of the traffic regulations. So the two parts of the member exemption now are the member organizes or sponsors the demonstrations. The member organizes it, that means that's the member's speech. If the member sponsors it, that means that the member is going to bat for someone else. Moms for gun control, whatever the case may be. The speaker has the authority to give that organization or individual the right to speak on the steps unencumbered by the traffic regulations. Well, it seems, I mean, you're talking about 12.2.20 now, right? I believe that's correct. That is connected by an and. So now there's an exemption if it's being done in the member's official capacity, it's being organized or sponsored, and the member is personally in attendance. Correct. I'm sorry. All those three things are required. You can't just sponsor or do something in your official capacity. It has to be all three, A, B, and C. Right. But in B, it says organized or sponsored. And so the member to sponsor is being done in the member's official capacity, whatever that means, sponsored, and then the member is personally present. So the member can, in his or her official capacity, sponsor the demonstration activity of someone else, and it can continue so long as the member is personally in attendance. So let's assume for a moment, I know you disagree with this, that it's a nonpublic forum, that the steps are nonpublic forum. Why is the member exemption unreasonable? Well, the regulation is put aside the member exemption for just a second. The member exemption is the most, if it is a nonpublic forum, then they can be closed to most demonstration activity. And I think Judge Henderson and I have focused on this exemption as being of concern in terms of the reasonableness of the regulation. So can you speak to that? I can. Let me just say this real quickly. The Jews for Jesus case was closed to all First Amendment activities. That regulation was so broad. Of course, it doesn't matter what type of forum it is. This regulation is similarly so broad. There's no restriction on the demonstration activity. It has to be the type that draws attention. It could cover two people talking on the capital step. So overdraft makes it unreasonable in part, in your view? In part, yes, Your Honor. This member restriction also is unreasonable as we briefed it under the unbridled discretion doctrine. As Judge Millett concluded, there is no limitation on the type of speech that a member can choose to sponsor. So if a group comes in and says, hey, we want to speak, the member in his or her absolute discretion can allow that individual or that group to speak on the steps. That's an unbridled discretion problem, even if it's a nonpublic forum under Mansky. What do you make of the government's argument that because it has to be in the member's official capacity, then we're not as concerned about unbridled discretion because members obviously have discretion about what type of speech they want to engage in or sponsor? This is the government authorizing the speech of a third party. Whether we're talking about that in the member's personal capacity or individual capacity, it doesn't matter. If someone is hired to be a censor, they are acting in their governmental capacity, but they are still censoring. Here, the members are, whatever capacity they're acting in, acting as a gatekeeper in their absolute discretion as to who gets to speak on the capital step. Do you think the same problem would exist if the only exemption was for actual member speech, you know, members themselves speaking? You know, without being able to, you know, without having any discretion to include or sponsor other people's speech? Can individuals come and participate with the member in the member's speech? No, the regulations otherwise, you know, no demonstrations, but members can speak on the steps in their, you know, in their official capacity. There may be, in that situation, like the presidential inauguration can occur. It may be that if there is a law that is passed that allows a type of, a certain type of demonstration, say 9-11 remembrance or something along those lines, then that the speech would, just like in the Answer Coalition case, that might be governmental speech. But when an individual congressperson goes out and expresses his or her view on the capital steps, that's not governmental speech. That's the congressperson's view, even if it's official. The congressperson doesn't have the authority to announce the views of the United States government. For example, Representative Bush's demonstration activity protesting. I'm not suggesting necessarily it would fall under governmental speech, but that it would be reasonable to say, we have security interests in demonstrations on the steps, and the only type of speech we're going to allow is that of members, you know, going in and out who may want to speak to the public or to the press or whoever. Would that be reasonable? If it's a non-public forum, would that be a reasonable thing connected to the purposes of the regulations? My one hesitation is, there's no members that are going up and down the steps and entering the building that way, typically. I mean, the government entered into a binding stipulation in this case, saying that members typically enter the building through means other than the steps. And so to conceptualize the steps as their quote-unquote workplace, they're just in passing, walking by, it's just not accurate. So it's staff. I'm sorry, Your Honor? They're staff. S-T-A-F-F. The record, I believe, establishes the exact same thing. And that's another point about this member exemption. Are we granting it because they work in the Capitol or because they're congresspeople and their speech is special somehow? If it's because they work in the Capitol, then why aren't their Capitol receptionists given the same authority? Why aren't the groundskeepers given the same authority? This is not just about working in the Capitol. It's because we, the Capitol Police, is valuing their speech different from the speech of the rest of us, which is a significant problem. I mean, you know, we're talking about speaker, discrimination on the basis of speaker identity. True, for instance, on the White House grounds, you know, the President, the Vice President, or other, you know, senior officials can speak on the White House lawn, but members of the public cannot. I don't believe this Court has ever held that the White House lawn is a traditional public forum. We're talking about speaker-based identity in a traditional public forum, which is impermissible. I want to make one more clarification. The way that this case was litigated, we challenged the steps themselves, the sidewalks at the base, and then for the center steps, the rotunda steps, there's not a raised sidewalk right there, there's just the plaza. And so we allege that all three of those areas, the sidewalks, the steps, and the plaza at the base, were part of the area where Reverend Mahoney wants to demonstrate. And the district judge on page 4, JA446, noted that that was the area, those were the areas in question. I would also like to point out that under the demonstration areas map on page 396, while... Let me get back to what you just said. I don't see the significance of that since he explicitly, at least in two or three places, said, we're talking, I'm ruling only about the steps. And I think he may have even said how many steps there were. I can't remember now. There was a place where he did that. But as I understand the opinion, he was defining the steps, using the term steps, quote, to mean these areas that he's described on JA446. You can see in the little, the map that he has, he has... Judge Bloomberg has circled the areas in question on that page. The government today, and in their reply brief, says, oh, you know, we're not talking about the sidewalks to the north and south of the capital steps at the base. We agree that those are a public forum. If you look at the demonstration map on page 396, sorry, 394, those sidewalks are in the no demonstration zone. There are four little slivers of sidewalks on the eastern front, two in front of the House and Senate, and then two sort of in the middle. And then as the sidewalks wrap around the south and north, those are not yellow. Those are in no demonstration zone. So, Lederman, in 2001, said the eastern front sidewalk is a traditional public forum. The board, after that case, issued this demonstration map that had the sidewalks in the no demonstration zone. So, you know, I don't know what the government says in its brief that it doesn't enforce the no demonstration zone around those sidewalks. I don't remember which of your honors said it, but that's a problem of discretion. The document allows prosecution for being in that area and the government in its discretion is saying, well, we're not going to prosecute that. I would encourage your honors to look at Lederman. The analysis there is exactly what we're asking the court to do in the context of narrow tailoring. This is a near total ban. It's an under-inclusive ban insofar as it allows tourists, joggers, dog walkers, whatever, and it allows members of Congress to go out there. And then there are many less restrictive means, just like in Lederman. Permit. The board can impose a permit requirement. The board can impose a duration limitation. The board can impose group size limitations. I heard the government attorney say a number of times that, well, members of Congress are different because they typically announce that they're going to demonstrate. Well, the board could require that of the rest of us. I mean, the board could impose a requirement that the demonstration be announced. The board could impose a permit requirement as it does elsewhere on the capital grounds. So your challenge, and you say this will be confirmed in 446, JA446, is not only the seven eastern steps, but the sidewalks and the base. Yes, Sharon. I'm happy to point this out in a picture, but the Senate and the House steps are almost identical. I'll talk about them first. They have a raised sidewalk up from the plaza around all three sides, north, south, and east, and then they go up into the steps. So the area in question is all three sidewalks and the steps. In Lederman, this court already held that the sidewalk immediately east of the steps is the traditional public forum. So that's not really in dispute. I didn't have the steps before. And I think it's fascinating everybody avoids the case where we were dealing with the eastern steps, which I thought was what this is about. But in any event, so you're saying that any of the steps, any of the sidewalks, and any of the bases associated with the capital building are a traditional First Amendment? Yes, Your Honor. The center steps or the rotunda steps, as we call them, they're different in that they don't have a little raised base, but it's a plaza. So like Frisbee, it's a street. It's also a traditional public forum. And to be clear, I'm in agreement with Your Honor that Dellums decides this case. I mean, Dellums cited Nicholson. Nicholson very clearly held that the area in question is a traditional public forum. I think this court is bound by it. But there are, in addition to that, reason upon reason, precedent upon precedent, why the steps are traditional. So if you were to prevail 100% on your claim, all the capital steps would be a traditional First Amendment forum? No, Your Honor. Tell me what you're excluding, because these maps, it wasn't clear to me exactly what the district court was focusing on, much less what you were seeking. There are, on the Senate and House, approximately seven steps to a little landing, then approximately ten more steps to another little landing where there are barricades. We are seeking the sidewalk around the steps up to the barricade. In the rotunda, it's a little bit different. Again, there's not sidewalks at the base. There's just a plaza. There are seven steps, and then the barricade. So we're seeking up to the barricades in those steps as well. Three plus seven steps. In the center. In the center, yes.  The center, the east, and the west. There's a little bit different configuration. There's 18 steps on the House and Senate side, and then seven in the center. So the center are the only seven steps that are addressed here. They're only seven that are addressed. There are, I don't remember how many, above the steps to the plaza at the top, but we're not, again, we're not seeking ruling with respect to those steps, nor are we seeking ruling with respect to any steps on the western side, or frankly, anywhere else. It's just these three sets of stairs on the eastern front. In what you're describing as the rotunda. In the center. In the center. Yes, Your Honor. And then, of course, House and Senate as well. Those three sets of steps. Can I ask you how you define vigil? The dictionary says it's a watch. And I think I led my clerks on a merry-go-round about whether silent vigil is redundant. That term is used in the... As I understand the record, Reverend Mahoney, along with either his family or a few people, and I know it's not just limited to this, but wants to stand silently. Before Christmas, before Easter, and actually the dictionary says that was the time in religious terms that a vigil was held on the eve of a religious holiday. The demonstration activity that formed the basis of the claim here was a gathering with Reverend Mahoney, his wife, three or four other people holding sign that advocates for a position. That's exactly what he was doing when he was arrested on April, I'm sorry, August 12th, give or take, of 2021. So that's what forms the basis of the demonstration activity here. It's holding a sign advocating for a cause. Okay, I'm just, I just think that vigil is different from protest, rally, march, gathering, particularly since this also includes a one-person vigil. I mean, I would interpret the word vigil to mean a religious leader praying slyly. But wouldn't it have to be a religious leader? No, of course not. I'm sorry, Your Honor, but it would include that, and my client is a religious leader, so I would, yes, that's right. Praying out loud. I just want to be clear. I think that Tennessee's question implied to me that she was distinguishing between a silent vigil, just bodies present, and a speaking vigil, if I can put it that way. I mean, I think that a silent vigil can be communicative. If we're getting at the question of whether it's protected by the First Amendment, a silent vigil can be communicative. If you are gathering with others, and you have spoken with the others about what the purpose of the gathering, that could be communicative, even if the prayer to God itself is not out loud. But that's why I said in my answer that it would include a religious leader quietly praying. My only point is that what goes on on the Capitol grounds does not preclude announcements before the vigil or whatever. Exactly, Your Honor. On the Capitol grounds as to why I am going to be there Monday through Friday from 10 to noon. Exactly, Your Honor. Your Honor, may I speak to the remedy? All right. The district court here enjoined the board from enforcing the no-demonstration zone in full, as to the world. But that's been said. Didn't he say that? I'm sorry, Your Honor? Didn't he say that? He did say that. He did say that pending appeal. But that's what the injunction, scope of the injunction is. The board, in its summary judgment briefing, did not oppose our request for universal relief. So the board has forfeited any argument that it has that universal. But it breaks the jurisdiction, though, doesn't it? The government does make an Article III argument, Your Honor. And I do think that would not be barred by this principle. But the Supreme Court, this court, neither this court nor the Supreme Court has ever held that a universal injunction is a jurisdictional question. In CASA, the Supreme Court held that the Judiciary Act of 1789 didn't authorize courts to enter universal relief, but it specifically reserved the question of whether Article III allows for universal relief. And I would submit that this court's decision in the national mining case, which authorizes vacator as the proper remedy under the APA, necessarily means that universal relief is permissible under Article III. If it weren't the case, then the APA would be unconstitutional. It could only enter relief as to the parties in an APA claim as well. So this court has already held that universal relief is not an Article III problem. So that, you know, now we're back to waiver where the government has argued, or forfeiture, where the government has argued that the injunction is manifestly unjust. And that argument, I would submit, has been forfeit. In addition, they can't raise an argument for the first time in reconsideration, which is what they did. Well, what about the Supreme Court decision? Explain. I'm sorry, Your Honor. Forfeiture applies when there is no explanation given for not raising an issue of which you were aware and had the opportunity to present. Now we have a Supreme Court decision. District Court hasn't said anything about it. That is true. The government, however, argued lack of manifest or presence of manifest injustice even prior to the CASA case coming out. This is an argument they've been making around the country. They just, even before CASA, they just didn't make it in our case. So we believe it's forfeit. I would also point out that this is a First Amendment case. CASA was a case about the Birthright Citizenship Clause. The Supreme Court has long held since the 1940s that facial relief is uniquely appropriate in the First Amendment context, not to benefit the parties, but to benefit society. And that language comes from the Munson case. So while the Supreme Court held in CASA that the Judiciary Act of 1789 doesn't authorize universal relief, the First Amendment was enacted in 1791. And the Supreme Court has held 50, 60 more years that facial relief is uniquely proper in the First Amendment context because of the unique importance of speech in our constitutional design. I would also point out that in a pre-CASA case called Griffith against H.M. Florida, this same issue that was presented in CASA was brought to the Supreme Court, and the Supreme Court denied cert. Belito, Thomas, and Gorsuch would have voted to grant cert. Kavanaugh and Barrett wrote a separate opinion respecting why they denied cert. And what Justice Kavanaugh said was, this is not the proper vehicle for this case precisely because the First Amendment presents, quote, doctrinal complexities that make this a difficult case to decide. And so I would submit, Your Honor, that even if you're in the business of counting noses, we don't have five noses for this CASA being a holding that extends to the First Amendment. And you don't think Justice Kavanaugh's point about complexity applies? I'm sorry, Your Honor? You do not think Justice Kavanaugh's point about complexity applies here? I think it absolutely applies here. I think because of the doctrinal complexities of the First Amendment, namely, we have granted standing exceptions under the overbreadth doctrine. And you think this court should just go ahead and decide it, not remand it for the district court to examine the question in light of... I believe this court can decide that question, Your Honor. And the question is, should it? I think the issue has been fully vetted, and this court can... We would take either, but we believe that this court can consider the question afresh. All right. Thank you. Thank you very much. About two minutes. Thank you, Your Honors. I'd just like to address a few points in my limited time. First of all, I'd like to return to Judge Grau's question about there being a line-drawing problem. I do think that plaintiff has a line-drawing problem here. The only distinction that plaintiff draws between the lower halves of the steps and the upper half of the steps is that there's a barricade. That barricade has no talismanic significance. The board has, you know, allowed the public, out of its own grace, to use the bottom steps. And I think this court's cases, including Hodge and Oberwetter, are very clear. You're not supposed to penalize the government for opening, you know, property to the public. That doesn't create a First Amendment problem. As a matter of grace. Your Honor, again, this is the government's property, and it has opened it up to the public to have access to, you know, go on to the property, but that doesn't mean it's opening it up for demonstration activities. That's the tradeoff that the board has, you know, allowed to happen here, and I think that's supported by this court's cases. I would also point out, you know, as my second point, that both Hodge and Oberwetter, Oberwetter's the case about the Jefferson Memorial, discussed situations where the government there allowed certain speech, circumscribed speech, in the nonpublic forum, and that didn't create a problem of reasonableness. Such a different context. Your Honor, I don't think that it is a different context. Well, it has nothing to do with legislating. It has nothing to do with commemoration. It's a small memorial. I mean, it's magnificent, but it's small in size. Your Honor, but the government would hold its own events there, and as Hodge discussed in the Supreme Court Plaza case, it would sometimes allow attorneys to speak on the steps, even though as a general matter, that expressive activity was not allowed by the public. The last just quick point I would like to make is, I think the other side identified certain alternatives that, you know, plaintiff thinks are appropriate here. I would just point the court to the Supreme Court's recent decision in Free Speech Coalition v. Texton, which was about Texas's age verification law, and there the Supreme Court reiterated the principles, again, this is assuming we're applying intermediate scrutiny, that even if there are other alternatives that have been identified that are equally or more effective, as long as the restriction at issue directly advances the government's interest, and that the interest would be less well served without the restriction, it should be upheld under intermediate scrutiny. Your Honors, unless there are any other questions, we would ask that this court reverse. All right. Thank you. Thank you, Your Honors.
judges: Henderson; Rao; Rogers